UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PATRICIA ZIMPFER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:06-CV-704 CAN |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

**OPINION AND ORDER**

On October 10, 2006, Plaintiff Patricia Zimpfer (Zimpfer) filed her complaint in this Court. On February 5, 2007, Zimpfer filed an opening brief and she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On April 24, 2007, Defendant Social Security Administration (SSA) filed its response brief. On May 10, 2007, Zimpfer filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

This case is actually before this Court for a second time. Zimpfer originally filed her application for Disability Insurance Benefits (DIB) on February 28, 2000 (Tr 297). Zimpfer claimed that her last date insured for purposes of DIB is June 30, 2003 (Tr. 298). Zimpfer claims she is entitled to benefits pursuant to Titles II of the Social Security Act.  See 42 U.S.C. §§ 416(i), 423, 1381a. Originally, on September 27, 2001, an Administrative Law Judge (ALJ) found Zimpfer was not disabled and denied Zimpfer's application for DIB (Tr. 18-25). Eventually, Zimpfer appealed the ALJ's decision to this Court, and this Court subsequently, on

August 6, 2004, remanded this case with instructions to further consider Zimpfer's claims of depression and manual limitations (Tr. 297, 319-33).

Before a final decision was reached on Zimpfer's original DIB application, Zimpfer filed a new application for DIB on January 23, 2003 (Tr. 297).  This application was consolidated with Zimpfer's original application of February 28, 2000 (Id.).  On March 9, 2005, Zimpfer appeared at a second hearing before an ALJ, whom issued a denial of Nelson's claim (Tr. 305, 709-31).      The ALJ found that Zimpfer had not engaged in substantial gainful activity, and that she had the following severe impairments: fibromyalgia,[1] arthritis of the knees, headaches, and disorders of the spine (Tr. 300).  However, the ALJ found that Zimpfer did not have any impairments that met one of the impairments in 20 C.F.R. app. 1, subpart P, § 404 (Tr. 301.). The ALJ found that Zimpfer had the residual functional capacity (RFC) to lift and carry ten pounds, stand and walk less than two hours in an eight hour workday, work in an environment that did not have concentrated exposure to wetness or humidity, and an inability, to climb, stoop, kneel, crawl, crouch, and occasionally balance  (Id.).  Although Zimpfer could not perform her past work, the ALJ found that she could perform other jobs that exist in significant number in the national economy, which meant Zimpfer is not disabled (Tr. 304-05).

Zimpfer appealed the ALJ's decision to the Appeals Council.  (Tr. 292-93)  The Appeals Council denied review, and as a result, the ALJ's decision became the Commissioner's final decision (Tr. 276).  20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on October 10, 2006, Zimpfer filed a complaint in this Court seeking a review of

---

[1] Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown.  Stedman's Medical Dictionary 725 (28th ed. 2006).

the ALJ's decision. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.   ANALYSIS**

    A.    <u>Facts</u>

A detailed statement of facts is set forth in this Court's previous opinion regarding Zimpfer's first claim and will not be repeated here. However, Zimpfer's second claim, which was consolidated into her first, will be discussed.

In her second claim, Zimpfer alleged a disability onset date of June 30, 2003 (Tr. 298). Zimpfer claims she suffers from fibromyalgia, headaches, neck, shoulder, back, hand, and knee pain (Tr. 386). Zimpfer claims she can lift 5 to 10 pounds occasionally, make simple meals, grocery shop with help, drive for short periods of time, and walk only short distances (Tr. 405-08). Zimpfer testified that since her first hearing before the ALJ, her pain and ability to move and function has decreased (Tr. 710). Zimpfer saw many doctors for her problems.

Dr. Thomas Magill (Dr. Magill), an orthopaedic surgeon, examined Zimpfer several times from 2001 to 2004 (Tr. 498-501, 641-46, 656-67). Dr. Magill indicated that Zimpfer complained of pain (Tr. 498-501). Dr. Magill indicated Zimpfer had bone grafting done (Tr. 501). All x-rays indicated good bone in the grafting areas and that there was good cartilage space (Tr. 498). Dr. Magill also injected the pain relievers Lidocaine and Synvisc into Zimpfer's body several times (Tr. 641-46).

Zimpfer also saw Nicholas R. Straniero, M.D. (Dr. Straniero) (Tr. 519). Dr. Straniero indicated that Zimpfer reported problems standing, walking, using her hands, lifting, bending, and stooping due to pain (Tr. 515). Dr. Straniero diagnosed Zimpfer with fibromyalgia (Tr.

3

518). Dr. Straniero also indicated that Zimpfer was resistant to an exercise program or a stretching program (Tr. 519).

Zimpfer claims that she is in so much pain that she cannot use her hands properly, cannot sleep, and that her hands, knees, feet, and legs swell, which greatly restricts her movement. (Tr. 712-14). Zimpfer claims that she cannot do any repetitive actions without getting aching pains, and also, she has to rest frequently (Tr. 721). Zimpfer claims that the ALJ failed to incorporate these limitations into his RFC finding. Zimpfer makes several other arguments for remand, but this Court shall only address the ALJ's assessment of Zimpfer's credibility.[2] Thus, the issue this Court must resolve is whether the ALJ properly assessed Zimpfer's credibility based on her allegations of pain and evidence in the record.

    B.    <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. <u>See</u> 42 U.S.C § 405(g); <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v. Barnhardt</u>, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to

---

[2]Zimpfer also alleges that the ALJ failed to make a proper RFC finding, and that the ALJ's step 5 finding flawed. However, if the ALJ failed to assess Zimpfer's credibility, the ALJ's RFC assessment is inherently flawed, which automatically makes his step 5 finding flawed as well because the ALJ incorporated his RFC determination into his hypothetical he posed to the Vocational Expert. Consequently, this Court will only address Zimpfer's argument regarding the assessment of her credibility.

4

his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

    C.    <u>Zimpfer's Motion for Summary Judgment or Remand</u>

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Zimpfer must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the

claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found that the claimant's residual functional capacity allowed her to perform other work that existed in significant numbers in the national economy at step five. As a result, she was not disabled. Zimpfer argues that the ALJ's assessment of Zimpfer's credibility was flawed.

1. <u>The ALJ's determination of Zimpfer's credibility was not supported by substantial evidence</u>

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003). However, Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," but an ALJ cannot simply state that an individual's allegations are not credible. <u>Golembiewski</u>, 322 F.3d at 915; <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (quoting <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995)). The ALJ committed this precise error in this case.

With all of Zimpfer's impairments that the ALJ found to be severe, Zimpfer's main complaint is that she is suffering from pain because of those impairments. The ALJ stated,

6

> [u]pon considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

This explanation by itself without further elaboration is not sufficient.[3]  See Golembiewski, 322 F.3d at 915.

The ALJ did not indicate whether the objective medical evidence undercut her credibility, nor did the ALJ provide any articulation why Zimpfer was not credible. The ALJ discusses medical evidence in the record regarding Zimpfer's claims of pain. However, the ALJ never indicates if Zimpfer is not credible because her testimony is inconsistent with this evidence. Even if this Court were to assume, which it cannot,[4] that the ALJ found Zimpfer to be not credible because her testimony was inconsistent with the objective medical evidence he cited, the evidence the ALJ reiterates creates conflicting inferences. For example, the ALJ points to Dr. Magill's finding that there was "no evidence of significant swelling or nodules of the dorsum and volar aspect of all of her fingers," which supports the conclusion that the ALJ found Zimpfer's testimony was not consistent with the objective medical evidence. However, the ALJ also points to Dr. Magill's findings that Zimpfer reported pain in her knees, hip, and elbow, and was given injections for her pain, which supports Zimpfer's claims   Within the same paragraph, the ALJ has pointed to evidence that both contradicts and supports Zimpfer's claim.

---

[3]The ALJ states that he "considered all symptoms in accordance with the requirements of . . . [SSR] 96-7p." (Tr. 302) However, the ALJ cannot recite the factors that are described in the regulations for evaluating symptoms or simply state that those factors have been considered. Zurawski v Halter, 245 F.3d 881, 887 (7th Cir. 2001).

[4]This Court cannot engage in *post-hoc* analysis on the ALJ's behalf to support his conclusions. Haynes, 416 F.3d at 626.

7

Thus, this Court is left guessing what conclusion the recited evidence supports let alone whether it supports a conclusion at all.  Merely reciting this evidence from the record without articulating how that evidence bears on the Zimpfer's credibility is a perfect example of the ALJ failing to build an adequate analytical bridge from the evidence to his conclusion.

Nor can this Court say this omission was harmless error.  Severe pain can be totally disabling.  See eg. Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004); Zurawski, 245 F.3d at 889.  Where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations.  Zurawski, 245 F.3d at 887-88.  In the present case, the ALJ recounted a substantial amount of objective evidence that supported Zimpfer's claims.[5]  Consequently, a remand is warranted to allow the ALJ to investigate Zimpfer's claims of pain and provide an explanation why Zimpfer's claims are not credible.[6]

Finally, this Court cannot say that the ALJ's previous discussion regarding Zimpfer's subjective claims of pain from the first hearing is sufficient.  The ALJ's discussion of Zimpfer's claim in his previous opinion was much better.  The ALJ discussed all of Zimpfer's symptoms, the objective evidence supporting those symptoms, and finally a reason why he found that evidence still did not fully support Zimpfer's claims (Tr. 20-22).  However, all of the evidence the ALJ considered was from the time period between 1999-2001.  Since that time, Zimpfer has submitted additional evidence regarding her pain with regards to a second, new claim that was

---

[5]The ALJ pointed to records from Dr. Magill that Zimpfer was receiving injections for her pain and that they were ongoing (Tr. 302).  The ALJ pointed to records of Dr. Reich that Zimpfer complained of pain, fatigue, and stiffness (Id.).  The ALJ also cited to the records of Dr. Straniero who diagnosed Zimpfer with fibromyalgia (Tr. 303).

[6]The ALJ is cautioned to follow SSR 96-7p and Zurawski, 245 F.3d at 888 for direction on what to consider in articulating whether a claimant is credible.

filed after this Court rendered its first decision.[7]  Consequently, even though the ALJ's previous analysis was much better regarding Zimpfer's claims, that analysis cannot simply be impeded to Zimpfer's new claims and evidence of pain that have developed since the ALJ's first decision.

In summary, the ALJ aphoristically stated that Zimpfer's testimony was not credible without stating a reason.  While the ALJ discussed a tremendous amount of medical evidence from the record, the evidence cited leads to conflicting inferences.  This Court is not saying that the ALJ's finding is incorrect, but simply that more articulation is needed.  As it stands, this Court cannot determine whether the ALJ's opinion is supported by substantial evidence or not.  Consequently, this Court finds that a remand is warranted.

### III.   CONCLUSION

The ALJ's analysis of the claimant's credibility was not supported by substantial evidence.  As a result, this Court **GRANTS** Zimpfer's request and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case.

**SO ORDERED.**

Dated this 2nd Day of November, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge

---

[7]The new claim Zimpfer filed was consolidated into her old claim after it was remanded by this Court (Tr. 297).